# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHLEEN SANCHEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | No. 2:17-CV-2262-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (ECF Nos. 14 and 16), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' briefs on the merits (ECF Nos. 22 and 24).

        The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521

1

(9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Commissioner's final decision is affirmed.

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). The sequential evaluation proceeds as follows:

| | | |
|---|---|---|
| Step 1 | | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

2

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on February 19, 2014. See CAR 15.[1] In the application, plaintiff claims disability began on December 13, 2012. See id. Plaintiff asserted that she became unable to work due to anxiety disorder and bipolar disorder. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on January 28, 2016, before Administrative Law Judge (ALJ) Sara A. Gillis. In an April 11, 2016, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): anxiety disorder and bipolar disorder (20 CFR 404.4520(c));

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: she can understand, remember, and carry out simple and detailed job instructions, but nothing complex. She can maintain concentration, persistence, and pace for simple and detailed job tasks. She can interact with supervisors and coworkers but should avoid teamwork assignments with coworkers. She can occasionally interact with the public;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 17-24.

After the Appeals Council declined review on August 22, 2017, this appeal followed.

///
///
///
///
///
///

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on February 26, 2019 (ECF No. 18).

4

# III. DISCUSSION

In her opening brief, plaintiff argues that the ALJ failed to provide clear and convincing reasoning in finding that plaintiff's statements were not credible.

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.
>
> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

/ / /

/ / /

/ / /

### A. The ALJ's Finding

At Step 4, the ALJ assessed the credibility of plaintiff's statements and testimony. See CAR 20-22. As to the credibility of plaintiff's statements and testimony, the ALJ found:

> The claimant testified that she was unable to work because of anxiety attacks and bipolar disorder. She stated that her anxiety attacks do not have specific triggers. She indicated that she has had panic attacks for many years, but that stresses at home and work worsened the anxiety attacks in 2012. She described symptoms including racing heart, desire to run out, and sweating. She stated that she has panic attacks two or three times a week and that she feels the effects of a panic attack last for up to two hours after the panic attack has ended. She related that she has panic attacks on buses and in cars going over bridges. The claimant testified that she does not think that her medications prevent her panic attacks and that the severity of the attacks has not improved. She indicated that she has good days and bad days, and on a bad day, she does not leave her house. As to her bipolar disorder, she stated she had mood swings. She indicated that her bipolar disorder is stabilized on medication. The claimant testified that she has issues with her memory and concentration. She indicated that she often forgets things and sometimes forgets to take her medications. In terms of her activities of daily living, she testified that she does not shop but she does all the cooking and cleaning at home. She indicated she could go with a friend to a restaurant if there were not too many people. As to her functional capacity, the claimant testified that she would miss four days of work a month because of symptoms. She indicated that she would have difficulty focusing for about two hours out of an eight-hour day.
>
> * * *
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the records for the reasons explained in this decision.
>
> In terms of the claimant's mental impairments, the medical evidence does not support any greater limitation than the residual functional capacity determined herein. Though the claimant alleged an onset date in December 2012, it appears from the record that the claimant did not seek treatment for nearly a year, until November 2013 (Exhibit 1F, p. 2). The claimant was initially prescribed citalopram for her anxiety, and a month later was prescribed lithium for her bipolar disorder (Exhibit 1F, pp. 1, 2). In March 2014, the claimant reported to her psychiatrist that her medication helped her anxiety "a lot" (Exhibit 4F, p. 2). The claimant's treatment records from June 2014 on indicate the claimant was doing well and was stable on her medications (Exhibits 4F, p. 1; 6F, pp. 2-3, 6). Mental status examinations in November 2014 and December 2015 note that the claimant was neat, clean, and had good grooming. She was cooperative, had adequate eye contact, normal speech, engaging mood, and stable affect. Her though process was linear, she was oriented, had intact judgment and cognition, and good insight (Exhibit 7F, pp. 2, 7) There is no indication in the record that the claimant has required

emergency room treatment or psychiatric hospitalization for her mental impairments. Given the claimant's reported symptomology and treatment, the undersigned finds that the claimant's mental impairments cause the claimant limitations that are reasonably accommodated by the residual functional capacity determined herein.

On April 4, 2014, Richard Hicks, M.D., Board certified in psychiatry, conducted a complete consultative psychiatric evaluation of the claimant (Exhibit 2F). The claimant's chief complaints were anxiety and panic attacks. Positive findings from the mental status examination included: some pressured speech when talking about her panic attacks, some loosening of associations, some tangentiality, and some circumstantiality. The claimant had a labile affect but was mainly appropriate and had difficulty with similarities and differences. Significantly, the claimant made good eye contact, was cooperative, and had normal speech. She was able to interpret proverbs, had adequate concentration, and was able to do serial seven subtractions. Based on the examination, Dr. Hicks assessed a Global Assessment of Function (GAF) score of 55, indicating moderate symptoms or difficulty functioning. Dr. Hicks opined the claimant would have difficulty doing any kinds of work or being consistent and regular. He further opined that the claimant could interact with coworkers and the public, though she is uncomfortable with crowds.

As for the opinion evidence, the undersigned has given significant weight to the opinions of the State agency psychological consultants. On initial review and reconsideration, he concluded the claimant was capable of recalling simple routine tasks, with limited public contact (Exhibits 1A; 3A). As set forth in Social Security Ruling 96-6p, State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(e), and in the evaluation of the medical issues in disability claims under the Act. As members of the teams that make determinations of disability at the initial and reconsideration levels of the administrative review process (except in disability hearings), they consider the medical evidence in disability cases and make findings of fact on the medical issues. The findings made by the consultants include, but are not limited to, the existence and severity of an individual's impairments and/or symptoms, whether the individual's impairments meets or is equivalent in severity to the requirements for any impairment listed in 20 CFR part 404, subpart P, appendix 1 (the Listing of Impairments), and the individual's residual functional capacity. These opinions are consistent with the claimant's longitudinal treatment records, which document no more than moderate findings and show improvement with medication. Their opinions are also consistent with the claimant's reported activities of daily living, as described above. Accordingly, the undersigned has given significant weight to these opinions and the residual functional capacity determined herein accommodates the findings of the State agency psychological consultants. However, as will be discussed below, the claimant's treating physician has reported she maintains the ability to not only perform simple tasks but that that her memory was good and could perform a variety of technical or complex instructions. Only mild difficulties in maintaining concentration, persistence and pace were noted. (Exhibit 3F) The claimant's physician further reported she had mild restriction in understanding, remembering and carrying out technical and/or complex job instructions. (Exhibit 5F) As such, the undersigned

8

finds that a limitation to simple detailed job instructions and task would adequately accommodate her mental impairments.

CAR 20-22.

### B. The Plaintiff's Contentions

Plaintiff alleges she suffers from severe anxiety attacks and bipolar disorder. At plaintiff's administrative hearing, she testified that her anxiety attacks had become worse due to increased stress at home. See ECF No. 22, pg. 4. As a result, plaintiff would suffer multiple panic attacks on a daily basis, be unable to travel, and only leave the house on "good days." Id. Additionally, plaintiff claimed to suffer from difficulty concentrating and a shortened attention span. Id. As a result of these symptoms, plaintiff claimed to be unable to sustain employment. See ECF No. 22, generally.

Plaintiff argues that:

> In this case, the ALJ made no specific findings regarding Plaintiff's credibility. The only findings made by the ALJ was the general finding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision". Tr. 21. No further reasoning was given by the ALJ. The ALJ failed to provide more than general findings in contravention of the law. Orn v Astrue, 495 F.3d 625, 636 (9th Cir 2007) ("it is not sufficient for the adjudicator to make a single, conclusory statement that `the individual's allegations have been considered' or that `the allegations are [not] credible.'")

ECF No. 22, pgs. 7-8.

To support this argument, plaintiff relies on two specific cases. First, plaintiff cites to Brown-Hunter v. Colvin, 806 F.3d 487 (9th Cir. 2015). Specifically, plaintiff states that, in that case:

> . . .The ALJ made a general finding that the "functional limitations from the claimant impairments were less serious than alleged". Id. at 493 (9th Cir. 2015). The court concluded that this was not the kind of specific reasons sufficient to determine that the Plaintiff's "testimony was not arbitrarily discredited". Id. at 494. The court further found that "Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her noncredibility determination" the ALJ had created legal error. Id.

ECF No. 22, pg. 8.

9

Plaintiff also references Henshaw v. Colvin, No. 1: 14-cv-01788-SKO (E.D. Cal. Feb. 11, 2016), as an example where the recitation of the record without specific discussion of the credibility finding was error. Quoting Henshaw, plaintiff argues:

> . . ."None of the ALJ's discussion of this evidence specifically related to Plaintiff's credibility or identified the grounds Defendant asserted in her brief as support for the ALJ's adverse credibility finding". Id. The Defendant in this case was "only able to offer grounds in her brief that were extrapolated from the ALJ's recitation of the medical evidence, not grounds stated by the ALJ as supporting an adverse credibility determination". Id.

ECF No. 22, pg. 8.

According to plaintiff, the ALJ's failure to provide specific reasoning for the rejection of her statements and testimony resulted in reversable error.

Defendant argues that the ALJ properly discounted plaintiff's testimony as to the disabling severity of her symptoms. "With respect to [p]laintiff's assertions that she was unable to perform work activity, the ALJ found her testimony inconsistent and not fully supported by the record." ECF No. 24, pg. 6 (internal citation omitted). According to defendant:

> In addressing Plaintiff's subjective testimony the ALJ noted that though her determinable impairments could reasonably be expected to cause her alleged symptoms, that her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (AR 21).

ECF No. 24, pg. 7

The ALJ, according to defendant, found significant distinctions between plaintiff's disability claims and the information presented in three areas: 1) plaintiff's ability to maintain household chores and daily activities; 2) the testimony of medical and vocational experts regarding her maintenance of cognitive function and rudimentary thinking skills; and 3) the mental competence which the ALJ observed plaintiff present during her social security hearing. See ECF No. 24, generally.

///
///
///
///

C. **Disposition**

According to plaintiff, the ALJ erred in this case because she "failed to provide more than general findings in contravention of law." ECF No. 22, pg. 8. Plaintiff states that the "only" finding made by the ALJ regarding her credibility "was the general finding that 'the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.'" Id. at 7-8 (quoting hearing decision at CAR 21). The gravamen of plaintiff's sole argument is that the ALJ erred because "[n]o further reasoning was given by the ALJ." Id. at 8.

The court rejects this argument for the simple reason that plaintiff's premise that the ALJ failed to provide any further reasoning is false. As outlined in the hearing decision, the ALJ provided a detailed analysis of plaintiff's subjective statements concerning her alleged mental impairments. See CAR 20-22. Specifically, the ALJ concluded plaintiff's statements and testimony were not entirely credible because: (1) plaintiff's failure to seek medical treatment until nearly a year after the alleged onset date; (2) reported improvement in symptoms with medication; (3) inconsistent objective observations on mental status examinations; and (4) the lack of evidence of hospitalization or emergency room treatment for mental impairments. See id. Because the ALJ clearly provided more than just a "general finding," the court does not agree with plaintiff that the ALJ erred with respect to credibility.

With respect to the specific cases cited by plaintiff, Brown-Hunter v. Colvin, 806 F.3d 487 (9th Cir. 2015) and Henshaw v. Colvin, No. 1: 14-cv-01788-SKO (E.D. Cal. Feb. 11, 2016), the Court is similarly unpersuaded that these authorities establish the ALJ made an arbitrary or baseless determination.

Brown-Hunter v. Colvin is distinguishable from the case at issue because, here, the ALJ does in fact identify the portions of plaintiff's testimony found to be less-than-credible. In Brown-Hunter, the court noted that "[the ALJ] did not specifically identify any [] inconsistencies; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination." Brown-Hunter, 806 F.3d at 494. By contrast, here, the ALJ

made specific references to the portions of plaintiff's testimony and record that were found to be inconsistent with the alleged disabilities. The ALJ recognizes plaintiff's testimony as alleging, in part, that: (1) she was unable to work because of anxiety attacks and bipolar disorder, (2) these panic attacks occurred multiple times per week and went on for hours at a time, (3) she suffered from mood swings, and (4) she had issues with her memory and concentration. AR 20. This testimony is subsequently contrasted with a variable quantity of expert opinions, medical records, and the general chronology of plaintiff's claimed disability. AR 20-24.

For example, in her determination, the ALJ notes that "[t]hough the claimant alleged an onset date in December 2012, it appears from the record that the claimant did not seek treatment for nearly a year, until November 2013. . ." AR 21. Also, the ALJ notes that "[t]he claimant testified that she has issues with her memory and concentration." AR 20. Yet, despite this, "the claimant's treating physician has reported she maintains the ability to not only perform simple tasks but that that her memory was good and could perform a variety of technical or complex instructions." AR 22. This juxtaposition between plaintiff's testimony and conflicting evidence illustrates a stark contrast to Brown-Hunter.

Henshaw v. Colvin is similarly distinguishable from the current case at issue. In Henshaw, the court concluded that the defendant was "only able to offer grounds in her brief that were extrapolated from the ALJ's recitation of the medical evidence, not grounds stated by the ALJ as supporting an adverse credibility determination". Henshaw v. Colvin, No. 1:14-cv-01788-SKO, 2016 U.S. Dist. LEXIS 17776, at *29 (E.D. Cal. Feb. 11, 2016). This is clearly contrasted with the current case at issue. As discussed above, the ALJ made a credibility determination by highlighting key inconsistencies between plaintiff's testimony and the medical evidence submitted for determination. The ALJ found her testimony inconsistent and not fully supported by the record. See AR 20-24. Therefore, the ALJ's findings here cannot be said to be "merely a conclusion with no supporting reasons or bases cited." Henshaw, 2016 U.S. Dist. LEXIS 1776, at *29-30.

///

///

# IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 22) is denied;
2. Defendant's motion for summary judgment (ECF No. 24) is granted;
3. The Commissioner's final decision is affirmed; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  February 13, 2020

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE